Opinion issued January 15, 2004





            



  






                                                       
    
In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00858-CR




BRANDON LEKEITH JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 885737




MEMORANDUM OPINION
          A jury found appellant, Brandon Lekeith Johnson, guilty of aggravated robbery
and assessed punishment at 40 years’ confinement. See Tex. Pen. Code Ann. §
29.03 (Vernon 2003). In four points of error, we determine whether (1) the evidence
was legally and factually sufficient to support the finding that appellant used or
exhibited a deadly weapon and (2) the evidence was legally and factually sufficient
to support the finding that appellant intended to commit robbery. We affirm. FACTS
          On May 13, 2001, the complainant, Fred Cramm, went to a topless bar (“the
club”), met an exotic dancer named “Jayla,”


 and exchanged cell phone numbers with
her. On June 13, 2001, one month later, he received a call from Jayla (“Culver”) and
agreed to meet her for dinner and drinks at Pappasito’s restaurant at 6:00 p.m. When
Cramm arrived at the restaurant, he could not find Culver, but she called shortly
thereafter. She told Cramm that the restaurant was too crowded and that she could
not find a parking spot. Cramm testified that, even though there were many parking
spots, he agreed to meet Culver at a strip center. When he arrived, Cramm waited for
about five minutes before Culver arrived in a car. She parked on the far side of the
parking lot, immediately went over to Cramm’s car, and got in the passenger’s seat. 
The two eventually decided to go to the Mariner restaurant. They were at the
restaurant for approximately three and one-half hours. Twice during their dinner
together, Culver got up from the table and used Cramm’s cell phone to place
telephone calls. At the end of the meal, they left the restaurant, and, while walking
out to his car, Cramm noticed a man, whom he identified as appellant, sitting near the
car. At this point, the stories begin to diverge. 
          Cramm testified that appellant approached him with a knife in each hand. 
Cramm testified that the knives “had a grip on each one, and [each] had a blade. I
would say about six to eight inches long.” Cramm stated that the appellant said
something that he did not understand and then stabbed him in the abdomen. Cramm
testified that Culver was standing near appellant and smiling, which made Cramm
conclude that he had been “set up.”
          Cramm testified that appellant told him to put his watch, wallet, and cell phone
on the ground. Appellant then told him to open the trunk and “get in the car or get
in the trunk.” Cramm tried to unlock the trunk, but because of the pain from the knife
wound, he could not open it. Instead, he put his keys on the ground, stood up, and ran
back into the restaurant. He never recovered the items taken from him.
          Cramm testified that the knife wound perforated his small intestine and
required surgery, during which 32 staples were used to repair the wound. As a result
of the surgery, Cramm “went through a lot of pain” and was hospitalized for six days,
two of which he spent in intensive care.
          Detective Tom Keen, a 29-year veteran of the Harris County Sheriff’s
Department, testified as an expert witness regarding deadly weapons. Detective Keen
testified that, based on his experience, the knives that Cramm described could
“easily” have been deadly weapons. 
          Appellant’s version of the story differed from that of Cramm. Appellant
testified that Culver, his girlfriend, told him that she had been sexually assaulted by
Cramm while working at the club and that she had asked appellant to “jump” Cramm. 
Appellant admitted that he was present when Culver called Cramm to arrange the
date. Appellant testified that he went to the parking lot to get an explanation
regarding the alleged sexual assault at the club. He said that he approached Cramm
and said, “I know what you did. I know who you are. I know what you did at the
club.” Appellant said that Cramm then made a sudden move toward him, but he did
not see Cramm try to punch or to strike him. In response to this sudden move,
appellant said that he pulled out a knife and stabbed Cramm. Appellant said that he
never intended to stab Cramm, but that he just reacted. Appellant testified that he 
had only one pocket knife and that it was not more than four inches long. He said
that, after the stabbing, Cramm backed away, looked at him and Culver, and then
began taking off his watch. Appellant testified that Cramm said, “You can have
anything you want. Just please don’t hurt me. Please don’t kill me.” Appellant said
that he refused to take the watch, wallet, cell phone, and car keys and that it was, in
fact, Culver who took the cell phone and wallet. Appellant was unsure about what
happened to the watch.
          Culver, testifying on appellant’s behalf at the punishment hearing only, said
that she had met Cramm at a strip club and that, after she performed a private dance
for him, Cramm raped her. Culver told appellant about the incident, and she then
decided to set up Cramm by having appellant scare him.
          Culver told the jury that she saw appellant stab Cramm, but did not remember
appellant’s demanding Cramm’s property. She admitted taking Cramm’s cell phone. 
Culver testified that, when Cramm ran away, she tried to chase him, but appellant
held her back. The knife used to stab Cramm was not recovered.
SUFFICIENCY OF THE EVIDENCE
          In four points of error, appellant contends that the evidence presented at trial
was legally and factually insufficient to show that (1) the knife used was a deadly
weapon and (2) appellant intended to rob Cramm. We follow the usual standards of
review. See Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (legal
sufficiency); King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000) (factual
sufficiency).
A. Deadly Weapon Finding
          In points of error one and two, appellant contends that there is legally and
factually insufficient evidence to show that the knife that he used was a deadly
weapon. A person commits the felony offense of robbery if, in the course of
committing a theft, and with intent to obtain or to maintain control of the property,
he (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2)
intentionally or knowingly threatens or places another in fear of imminent bodily
injury or death. Tex. Pen. Code Ann. § 29.02 (Vernon 2003). A robbery is
aggravated if a robbery is committed and the offender (1) causes serious bodily injury
to another or (2) uses or exhibits a deadly weapon. Tex Pen. Code Ann. § 29.03(a). 
In turn, a deadly weapon is defined as (1) a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury or (2)
anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17)(A)-(B)(Vernon 2003). A
knife is not a deadly weapon per se. Garcia v. State, 17 S.W.3d 1, 4 (Tex.
App.—Houston[1st Dist.] 1999, no pet.). However, if a knife is used in a manner
capable of causing death or serious bodily injury, it can be considered a deadly
weapon. Tex. Pen. Code Ann. § 1.07(a)(17)(A)-(B). In determining whether a knife
is a deadly weapon, a jury may consider (1) the size, shape, and sharpness of the
knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted
wounds; and (4) testimony of the knife’s life-threatening capabilities. Garcia, 17
S.W.3d at 4. The jury may also consider the nature and type of the wounds inflicted
by the knife when determining whether it is a deadly weapon. Id. at 4-5.
          1. Legal Sufficiency
          Looking at the evidence in the light most favorable to the verdict, we conclude
that the evidence is legally sufficient to support the deadly weapon finding. Cramm
testified that appellant displayed two six-to-eight-inch knives, and that appellant used
one of the knives to stab him. As a result, Cramm was in the hospital for six days,
two of which were spent in the intensive care unit. He suffered a
“through–and–through small bowel injury,” as well as an injury to his duodenum,
both of which required surgery and the insertion of 32 staples to close. Based on this
evidence, we conclude that a rational jury could find that the knives in question were
deadly weapons. See id.; see also Williams v. State, 477 S.W.2d 24, 25 (Tex. Crim.
App. 1972) (holding that pocketknife was deadly weapon when used to cut victim
multiple times, leaving wounds that required 48 stitches to repair). Accordingly, we
hold that the evidence was legally sufficient to show that the knife was a deadly
weapon. We overrule point of error one.
          2. Factual Sufficiency
          After reviewing all of the evidence neutrally, we conclude that the evidence is
not so obviously weak as to undermine confidence in the jury’s determination or so
greatly outweighed by contrary proof as to indicate that a manifest injustice has
occurred. See Zulianai v. State, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003). 
Appellant testified that he stabbed Cramm with a pocket knife that was under four
inches in length. In contrast, Cramm claimed that appellant had two, six- to eight-inch knives. To declare the evidence factually insufficient, we would have to
determine whose story was correct and which witnesses were more believable. We
will not replace the jury’s credibility determinations with our own. See Moreno v.
State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Accordingly, we hold that the
evidence is factually sufficient to support the deadly weapon finding. We overrule
point of error two.
B. Intent to Commit Robbery
          To prove an aggravated robbery, the State must first show that the defendant
stabbed the complainant in the course of committing a theft. See Tex. Pen. Code
Ann. § 29.02(a) (Vernon 2003). “In the course of committing a theft” means conduct
that occurs in an attempt to commit, during the commission, or in immediate flight
after the attempt or commission of theft. See Tex. Pen. Code Ann. § 29.01(1)
(Vernon 2003). The State need not prove actual theft; it need prove only that the
defendant had the requisite intent to deprive the owner of the property at the time of
the offense. Roseland v. State, 744 S.W.2d 610, 612 (Tex. Crim. App. 1988). In
points of error three and four, appellant contends that the evidence is legally and
factually insufficient to show that he intended to rob Cramm. We disagree. 
          1. Legal Sufficiency
          Looking at the evidence in the light most favorable to the verdict, we conclude
that the evidence is legally sufficient to show that appellant intended to rob Cramm. 
Cramm testified that, after he had told appellant to “take whatever you want,”
appellant instructed him to put his wallet, cell phone, and watch on the ground. In
addition, the State introduced extraneous offense evidence of a similar crime that
appellant had committed with his co-defendant, Culver, to show that appellant
possessed the requisite intent to deprive Cramm of his property.


 See Tex. R. Evid.
404(b) (providing that other crimes, wrongs, or acts are admissible to show intent). 
Accordingly, we hold that the evidence is legally sufficient to show that appellant
intended to rob Cramm. We overrule point of error three.
          2. Factual Sufficiency
          In support of his claim that the evidence is factually insufficient to show intent
to commit robbery, appellant points to his own testimony, in which he denied that he
had ever demanded Cramm’s property.


 In contrast, Cramm testified that appellant
told him to put his watch, cell phone, and wallet on the ground. Additionally, the
admission of the nearly identical extraneous offense, during which another man was
robbed in a similar manner, is evidence that appellant intended to commit robbery. 
After reviewing all of the evidence neutrally, we conclude that the evidence is not so
obviously weak as to undermine confidence in the jury’s determination or so greatly
outweighed by contrary proof as to indicate that a manifest injustice has occurred. 
Again, for us to overturn the verdict, we would have to decide who was more
believable—Cramm’s and Al Haoui’s testimony indicating that appellant and Culver
had set them up so that they could be robbed, or appellant’s testimony that he wanted
to confront Cramm about the alleged sexual assault of Culver. This we refuse to do. 
See Moreno, 755 S.W.2d at 867 (holding that issues of credibility should be left to
the fact finder). Accordingly, we hold that the evidence is factually sufficient to show
that appellant intended to rob Cramm. We overrule point of error four.
 
CONCLUSION
          We affirm the judgment.
 
 
                                                   Sherry Radack
                                                   Chief Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.

Do not publish. See Tex. R. App. P. 47.2(b).