Opinion issued December 18, 2008

 



                                       







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-01070-CR
____________

RAY MARTINEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1073565



 
MEMORANDUM OPINION

          A jury convicted appellant, Ray Martinez, of aggravated robbery.


 Having
found true the enhancement paragraphs alleging prior convictions for robbery and
possession of a controlled substance, the trial court assessed punishment at 38 years
in prison. We determine whether the evidence was legally and factually sufficient to
show that appellant used or exhibited a deadly weapon, a knife, in the commission of
the robbery. We affirm.
Facts
          On June 11, 2006, at approximately 8:30 p.m., appellant entered a TCBY Store,
proceeded to the counter at the rear of the store, leaned across the counter, and told
the woman behind it, Alicia Saldivar, to “get the money out.” Saldivar was behind
the counter in close proximity to the cash register along with Heather Orr, who was
being trained by Saldivar. Orr, who had not heard the initial demand, but only
mumbling, responded, “Excuse me?” Appellant, still leaning against the counter, as
if he was going to jump over it, then pulled out a knife and said in a whisper that only
the women could hear, “Give me the money. You have 10 seconds or you’re dead.”


 
At this point he was about one-and-one-half to two feet from the women, holding a
five-to-six-inch-blade knife, single-serrated-edged, with a pointed end, in their
direction. Upon seeing the knife, Saldivar and Orr attempted to alert Evan Jenkins,
who was working at the drive-through window’s cash register, that they were being
robbed. The two women then ran to the back office, where the store owner, Ann
Payne, and another employee, Tyler Bryant, were located, and they started calling the
police.  
          After the women drew his attention and briefly explained the situation, Jenkins
saw appellant walking toward him with a knife. Appellant told Jenkins to open the
cash register from approximately three to five feet away, in a forceful manner, with
the knife pointed toward him. The blade was five or six inches in length. Jenkins
complied with appellant’s demand and also assisted him with removing the money
from the drive-through window’s cash register. Responding to appellant’s demands
to receive someone’s car keys and to open the cash register at the counter, Jenkins
again complied, giving appellant the keys to his Mazda Tribute and then opening the
register at the front. Jenkins then ran to the back office of the store, where Saldivar,
Orr, Payne, and Bryant were located. Appellant did not cut, stab, or swing at anyone
with the knife. No one was hurt in the incident.
          Another witness, Charlie Montgomery, testified that he had just bought yogurt
and was sitting with his wife at a table outside the store when he saw appellant and
another man pass the store and then return. Appellant went in the store and directly
towards the cash register. Montgomery had heard a girl scream and saw appellant
digging in the cash drawer. Appellant had a knife that he kept open, with the blade
away from his body. Montgomery testified that the blade was approximately four
inches long and one inch wide. Montgomery saw appellant exit the store, enter into
a Mazda sports utility vehicle in the parking lot, and drive away. Montgomery called
9-1-1 and watched the path of appellant’s vehicle in order to tell law enforcement,
who arrived within 10 minutes, the direction of appellant’s flight. The other man
fled on foot.  
          At trial, a videotape was admitted into evidence that captured most of the
robbery on three stationary cameras in the store. In the videotape, appellant is shown
in close proximity to Saldivar, Orr, and Jenkins. At one point, appellant was standing
side-by-side with Jenkins, with the knife being displayed at all times, as Jenkins
removed money from the drive-through window cash register.
          Also presented at trial was testimony from a law enforcement officer, who
reviewed the videotape and testified that the knife in the video, in the manner of its
use or intended use, was capable of causing serious bodily injury or death.  
 Legal Sufficiency of the Evidence
          In point of error one, appellant argues that “the evidence was legally
insufficient to prove that the knife used in the offense was a deadly weapon in the
way [that he] used it or intended to use it.”

A.      Standard of Review
          In assessing legal sufficiency, this Court must consider the entire trial record
to determine whether, viewing the evidence in the light most favorable to the verdict,
a rational jury could have found beyond a reasonable doubt that the accused
committed all essential elements of the offense. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim.
App. 2001). We must “evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible.” Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999). In conducting a legal-sufficiency review, we do
not reevaluate the weight and credibility of the evidence, but ensure only that the jury
reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993). It is the function of the trier of fact to resolve any conflict of fact, to weigh
any evidence, and to evaluate the credibility of any witnesses. See Dewberry, 4
S.W.3d at 740; Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); see
also Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991) quoting (Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). We, therefore, resolve any
inconsistencies in the evidence in favor of the verdict, Matson, 819 S.W.2d at 843,
and “defer to the jury’s credibility and weight determinations.” Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). 
B.      The Law
          A person commits the offense of aggravated robbery if, in the course of
committing theft and with intent to obtain or to maintain control of the property, he
intentionally or knowingly threatens or places another in fear of imminent bodily
injury or death and uses or exhibits a deadly weapon. Tex. Penal Code Ann.
§§ 29.02(a)(2), 29.03(a)(2) (Vernon 2003). A deadly weapon is defined as:
(A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or

          (B) anything that in the manner of its use or intended use is capable of causing
          death or serious bodily injury. 

Id. § 1.07(17) (Vernon Supp. 2008). 
          “Although a knife is not a deadly weapon per se, a knife can be found to be a
deadly weapon based on the nature of its use or intended use.” Garcia v. State, 17
S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). Some factors that are
considered in determining whether a particular knife qualifies as a deadly weapon are 
“(1) the size, shape, and sharpness of the knife; (2) the manner in which [the]
appellant used the weapon; (3) the nature of any inflicted wounds; (4) testimony
concerning the knife’s life-threatening capabilities; and (5) the words appellant
spoke.” Banargent v. State, 228 S.W.3d 393, 398 (Tex. App.—Houston [14th Dist.]
2007, no pet.). 
C.      Discussion
          Appellant argues that the evidence is legally insufficient to show that the knife
was a deadly weapon because (1) there was no evidence that the knife was capable
of causing death or serious bodily injury and (2) the knife’s manner of use or intended
use did not render it capable of being a deadly weapon. He asserts that although the
size and shape were provided by several witnesses, no one testified as to whether the
knife was sharp. Appellant also contends that, because no one was hurt, there is no
testimony regarding wounds that could be inflicted by the knife.  
          Courts have considered threats made by the accused, and the physical
proximity of the accused and the victim, as factors in determining a knife’s capacity
to cause serious bodily injury or death. See Brown v. State, 716 S.W.2d 939, 946
(Tex. Crim. App. 1986). “[O]bjects used to threaten deadly force are in fact deadly
weapons . . . . The placement of the word “capable” in the provision [defining deadly
weapon] enables the statute to cover conduct that threatens deadly force, even if the
actor has no intention of actually using deadly force.” McCain v. State, 22 S.W.3d
497, 503 (Tex. Crim. App. 2000). “[E]vidence is sufficient if a knife is capable of
causing death or serious bodily injury or if it is displayed in a manner conveying an
express or implied threat that serious bodily injury or death will be inflicted if the
desire of the person displaying the knife is not satisfied.” Billey v. State, 895 S.W.2d
417, 422 (Tex. App.—Amarillo 1995, pet. ref’d). “Whether or not [an] appellant
would have carried out his threatened use of the knife is not relevant to the question
of whether he intended to use the knife as a deadly weapon. By producing the knife
and exhibiting its blade, even if only in part, [an] appellant achieve[s] his desired
effect of placing [a person] in fear of death or serious bodily injury.” Id. at 422–23. 
          Review of the record indicates that appellant made both express and implied
threats of serious bodily injury or death to the store’s employees. He also displayed
the knife in a manner that conveyed a threat of serious bodily injury or death.
Viewing the evidence in the light most favorable to the verdict, a rational jury could
have found beyond a reasonable doubt that appellant used or exhibited a deadly
weapon. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; McCain, 22 S.W.3d at 503;
Billey, 895 S.W.2d at 422. Therefore, we hold that the evidence is legally sufficient
to show that appellant used a deadly weapon in the commission of the robbery. We 
overrule point of error one.
Factual Sufficiency of the Evidence
           In point of error two, appellant argues that “the evidence was factually
insufficient to prove that the knife used in the offense was a deadly weapon in the
way [he] used it or intended to use it.” Appellant argues that the evidence was
factually insufficient because “it renders the verdict on the aggravating element
clearly wrong and unjust.” 
A.      Standard of Review
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before concluding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id.          In conducting our review, we must be cognizant of the fact that a jury has
already passed on the facts and avoid substituting our judgment for that of the jury. 
Lancon v. State, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008). The jury is the
sole judge of the credibility of the witnesses, and the weight to be given their
testimony, and may choose to believe all, some, or none of the testimony presented. 
Id. at 707. We therefore afford almost complete deference to a jury’s determination
when that decision is based on an evaluation of credibility. Id. at 705. In conducting
a factual-sufficiency review, we also must discuss the evidence that, according to the
appellant, most undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). We may not find the evidence factually insufficient simply
because we disagree with the verdict, but only because the verdict represents a
manifest injustice. Watson, 204 S.W.3d at 414. 
B.      Discussion
          Appellant argues that the overwhelming weight of the evidence is “counter to
the finding that he intended that the knife be capable of causing death or serious
bodily injury in these circumstances, or that he used it as a deadly weapon in the
commission of the robbery.” Appellant asserts that “the cumulative weight of other
testimony that he never thrust, cut, or stabbed anyone with the knife, no one was hurt,
he did not threaten anyone other than Ms. Orr, and he caused no violence during the
offense” makes a finding that the knife was a deadly weapon by the manner of its use
or intended use “clearly wrong and unjust.”
          We disagree. The fact that appellant did not actually carry out his express and
implied threats does not make the jury’s determination that the knife was a deadly
weapon “clearly wrong and unjust.” Reviewing the evidence in a neutral light, we
hold that the jury verdict is not against the great weight and preponderance of the
evidence. The jury was rationally justified in finding that the knife was a deadly
weapon and that appellant was guilty of aggravated robbery. We therefore hold that
the evidence was factually sufficient to support appellant’s conviction and overrule 
appellant’s second point.           Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Tim Taft
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Alcala.
Do not publish. See Tex. R. App. P. 47.2(b).