ACCEPTED
01-15-00101-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/31/2015 7:47:13 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00101-CR

In the
## Court of Appeals
For the
## First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/31/2015 7:47:13 PM

CHRISTOPHER A. PRINE
Clerk

————————◆————————

## No. 13-CR-3057
In the 405th District Court of
Of Galveston County, Texas

————————◆————————

## BRIAN DARNELL JOHNSON
*Appellant*
v.
## THE STATE OF TEXAS
*Appellee*

————————◆————————

## APPELLANT'S BRIEF

————————◆————————

**KEVIN STRYKER**
State Bar Number: 24037565
2600 South Shore Blvd., Ste. 300
League City, Texas 77573
Telephone:  409-632-0212
Fax Number:  1-888-252-3033
Strykerlawfirm@gmail.com

*Attorney for Appellant*

ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, Appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rules of Appellate Procedure 38.1(a) and 38.2(a)(1)(A), a complete list of the names of all interested parties, and the names and addresses of all trial and appellate counsel, is provided below:

*Counsel for the State:*

**Jack Roady**—Galveston County Criminal District Attorney

**T. Phillip Washington**—Assistant District Attorney at trial

**Allison Lindblade**—Assistant District Attorney on appeal

Galveston County Criminal District Attorney's Office
600 59th Street, Suite 1001
Galveston, Texas 77551

*Appellant or Criminal Defendant:*

**Brian Darnell Johnson**

*Counsel for Appellant:*

**Lynette K. Briggs**—Counsel at trial

7917 Highway 6
Hitchcock, Texas 77563

**Kevin Stryker**—Counsel on appeal

2600 South Shore Blvd., Suite 300
League City, Texas 77573

*Trial Judge:*

**The Honorable Michelle Slaughter**—Presiding Judge of the 405th
District Court

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ..................................................i

IDENTIFICATION OF THE PARTIES ....................................................................i

TABLE OF CONTENTS..................................................................................... ii

INDEX OF AUTHORITIES................................................................................ iii

STATEMENT OF THE CASE..............................................................................1

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF THE ARGUMENT ....................................................................4

APPELLANT'S FIRST POINT OF ERROR........................................................6

*The Evidence was Legally Insufficient to Convict Appellant of Aggravated Assault Causing Bodily Injury – Deadly Weapon, as charged in the Indictment, because There was Reasonable Doubt whether Appellant Committed the Offense in Self-Defense.* ................6

APPELLANT'S SECOND POINT OF ERROR...................................................13

*The Trial Court Reversibly Erred in Not Including a Jury Instruction under Texas Penal Code Section 2.03(d) in the Jury Charge on Guilt/Innocence.*.................................................................................13

APPELLANT'S THIRD POINT OF ERROR..........................................................19

*The Trial Court Reversibly Erred by not Including in the Jury Charge on Guilt/Innocence an Application paragraph Applying the Self-Defense Instruction under Texas Penal Code Sections 9.31 and 9.32 to the Facts of the Instant Case.*...................................................19

APPELLANT'S FOURTH POINT OF ERROR.....................................................23

*The Trial Court Reversibly Erred by not Including in the Jury Charge on Guilt/Innocence the Presumption found in Texas Penal Code Sections 9.31 and 9.32, along with the Required Language for Presumptions Favoring a Defendant under Texas Penal Code Section 2.05(b).*...................................................23

APPELLANT'S FIFITH POINT OF ERROR ........................................................36

*The Trial Court Reversibly Erred by not Including in the Jury Charge on Guilt/Innocence the Fail-to-Retreat Language found in Texas Penal Code Sections 9.31(e)-(f) and 9.32(c)-(d).*...................................................36

CONCLUSION AND PRAYER .............................................................................41

CERTIFICATE OF COMPLIANCE......................................................................43

CERTIFICATE OF SERVICE ..............................................................................44

## INDEX OF AUTHORITIES

**CASES**

*Abdnor v. State*,
871 S.W.2d 726 (Tex. Crim. App. 1994).........................................................20

*Allen v. State*,
249 S.W.3d 680 (Tex. App.—
Austin 2008, no pet.) ..........................................................................................7

*Allen v. State*,
253 S.W.3d 260 (Tex. Crim. App. 2008)................................... 15, 16, 17, 31, 39

*Almanza v. State*,
686 S.W.2d 157 (Tex. Crim. App. 1985)........................................ 14, 15, 31, 39

*Barrera v. State*,
982 S.W.2d 415 (Tex. Crim. App. 1998)..................................................... 19, 20

*Berry v. State*,
424 S.W.3d 579 (Tex. Crim. App. 2014)...........................................................8

*Brooks v. State*,
323 S.W.3d 893 (Tex. Crim. App. 2010)...........................................................7

*Byrd v. State*,
336 S.W.3d 242 (Tex. Crim. App. 2011)...........................................................6

*Chamberlain v. State*,
998 S.W.2d 230 (Tex. Crim. App. 1999)........................................ 19, 23, 36, 40

*Clayton v. State*,
235 S.W.3d 772 (Tex. Crim. App. 2007)...........................................................7

*Ellison v. State*,
86 S.W.3d 226 (Tex. Crim. App. 2002).........................................................15

*Holloman v. State*,
948 S.W.2d 349 (Tex. App.—
Amarillo 1997, no pet.) ..................................................................... 21, 26

*Jackson v. Virginia*,
443 U.S. 307 (1979) ...............................................................................6, 7

*Laster v. State*,
275 S.W.3d 512 (Tex. Crim. App. 2009)...........................................................7

*Miller v. State*,
815 S.W.2d 582 (Tex. Crim. App. 1991)........................................................26

*Olivas v. State*,
202 S.W.3d 137 (Tex. Crim. App. 2006).........................................................31

*Oursbourn v. State*,
259 S.W.3d 159 (Tex. Crim. App. 2008)..................................................... 30, 38

*Russell v. State*,
834 S.W.2d 79 (Tex. App.—
Dallas 1992, pet. ref'd)................................................................................14

*Saxton v. State*,
804 S.W.2d 910 (Tex. Crim. App.1991)...................................................................8

*Torres v. State*,
7 S.W.3d 712 (Tex. App.—
Houston [14th Dist.] 1999, pet. ref'd)........................................................... 21, 26

*Villarreal v. State*,
286 S.W.3d 321 (Tex. Crim. App. 2009)...................................................................7

*Villarreal v. State*,
453 S.W.3d 429 (Tex. Crim. App. 2015)........................................... 30, 32, 33, 35

*Warner v. State*,
245 S.W.3d 458 (Tex. Crim. App. 2008)............................................................ 15, 20

*Wilkerson v. State*,
920 S.W.2d 404 (Tex. App.—
Houston [1st Dist.] 1996, no pet.) .........................................................................14

*Williams v. State*,
235 S.W.3d 742 (Tex. Crim. App. 2007)...................................................................8

*Winfrey v. State*,
323 S.W.3d 875 (Tex. Crim. App. 2010)...................................................................8

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 36.14........................................................ 30, 38

TEX. PENAL CODE ANN § 9.32 ...............................................................................9

TEX. PENAL CODE ANN. § 19.02 .............................................................................29

TEX. PENAL CODE ANN. § 2.03 .............................................................................8, 9

TEX. PENAL CODE ANN. § 2.03(d)................................................................ 13, 14, 21

TEX. PENAL CODE ANN. § 2.05(b)...........................................................................26

TEX. PENAL CODE ANN. § 2.05(b)(2) ......................................................................31

TEX. PENAL CODE ANN. § 22.01 ..............................................................................9

TEX. PENAL CODE ANN. § 9.31 ........................................................ 9, 10, 19, 24, 29

TEX. PENAL CODE ANN. § 9.31(e)-(f)................................................................. 37, 40

TEX. PENAL CODE ANN. § 9.32.......................................................... 10, 25, 29

TEX. PENAL CODE ANN. § 9.32(c)-(d) ................................................................ 37, 40

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ........................................................................ i

TEX. R. APP. P. 39.1 .................................................................................... i

TEX. R. APP. P. 9.4(g) ................................................................................. i

TEX. R. APP. P. 9.4(i) .................................................................................43

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

In the 405th District Court of Galveston County, Texas, in cause number 13-CR-3057, Appellant was charged by Indictment with Aggravated Assault – Deadly Weapon. The cause was tried before a jury and the same returned a verdict of *guilty* on January 15, 2015. Appellant elected to have the same jury assess punishment. Said jury, after having found the State's punishment-enhancement allegations to be *true*, assessed Appellant's punishment at forty years' confinement in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), on January 16, 2015. Appellant timely filed written notice of appeal on January 16, 2015.

———————◆———————

## STATEMENT OF FACTS

On the night of September 24, 2015, Appellant and others were socializing at Obie's, a local pool-hall in La Marque, Texas, owned by Appellant's uncle. (RRIV – 26-27, 29, 32; RRV – 29-30). Amongst many that were present at Obie's were Appellant, Don Miles ("Miles"), Brittany Turner ("Turner"), and a guy named Alex ("Alex"). (RRIV – 32). At some point during the night, Miles, assaulted Appellant by punching Appellant after Appellant, Miles, and Alex got into an argument regarding Appellant's disabled younger brother being harassed

on a separate occasion. (RRIV – 33-37; RRV – 32, 34, 73, 96, 117). Miles, who had an extensive criminal history, including assaults, and who was serving a three-year felony sentence for Robbery at the time of Appellant' trial, was known to carry a knife with him; on this night, Miles wore his knife holstered on the outside of his pants. (RRIV – 45, 66-67, RRV – 33, 40, 52). During this initial assault inside the bar, Miles did not brandish the knife. (RRV – 32-33).

Separately in the bar, several females in the group began to fight amongst themselves. (RRIV – 37-39, 92-93, 97; RRV – 32-33). Eventually, somebody at the bar proclaimed, "the police are coming," and nearly everyone began to leave the bar. (RRIV – 37, 39-40; RRV – 35-36).

Testimony differs on what exactly happened once Appellant and Miles were outside of the bar. Appellant testified that he went outside of Obie's and Miles and Alex came at Appellant again and started beating Appellant up. (RRV – 36-42, 74). Appellant testified that Miles then took out his knife, which had a blade approximately five to seven inches in length, and cut Appellant several times. (RRIV – 82; RRV – 36-37, 40). Appellant repeatedly testified that he was afraid for his life. (RRV – 38, 40-41, 71, 77). Appellant testified that while he was on the ground and being "beat up" and cut by Miles and Alex, Appellant grabbed a gun and shot at Miles "two or three times" in self-defense, hitting Miles once. (RRV – 39-41, 50, 61, 68). Appellant testified that he then got up and ran to his

car while being chased by Miles and Alex; Appellant drove to a family-member's house where he met briefly with a friend, Jennifer Warfield ("Warfield"). (RRIV – 130-139; RRV – 47, 76). After he and Warfield talked in her car, Appellant ran inside his family's house after seeing a vehicle coming down the street. (RRIV – 137). Appellant was arrested approximately two months later for the instant charge. (RRV – 77).

Miles, who admitted at trial that he was intoxicated the night of the shooting, testified that once he was outside of Obie's, he saw Appellant and Appellant told Miles that he needed to leave. (RRIV – 42, 44). Miles testified that, "because I'm pissed," he walked toward Appellant and Appellant was backing up. (RRIV – 43). Miles testified that he believed, since they were now outside the pool-hall, it was "open-season" and "we should just go ahead and handle it like men." (RRIV – 41, 71).

Miles testified that he then turned his back to Appellant and Appellant shot him in the buttocks area. (RRIV – 46); (SX 10-12). Miles testified that he drew his knife and Appellant shot the gun a few more times, though testimony was never adduced where Miles thought Appellant was shooting. (RRIV – 47-48).

After the confrontation, neither Miles nor Appellant wanted the police involved. (RRIV – 50 46; RRV – 69). Miles testified that he got into a car and, though he initially did not want to go to the hospital because he did not want the

police involved, he was convinced by others that he needed to go and so drove himself to the hospital. (RRIV – 50-51). Miles testified that the wound caused him only "slight discomfort" at the time of the shooting and he felt no pain from the shooting by the time of trial. (RRIV – 56, 64).

The only other eye witness to testify at trial regarding what had happened at Obie's was Brittany Turner ("Turner"), the girlfriend of Appellant's cousin. (RRIV – 83-122). Turner testified that she left to go outside of Obie's when she heard someone say they had called the police; she testified that once outside, she was getting into her vehicle when Appellant "came around the corner of Obie's and started shooting." (RRIV – 97-98). However, Turner admitted that she actually did not see who was shooting at first; she testified that "the first sound of the gun going off we all froze and looked behind use [and saw] Brian Johnson standing there with a gun." (RRIV – 99, 100). Turner testified that she did not know whether Miles, or anyone else, had a knife. (RRIV – 102, 119, 121).

————————◆————————

## SUMMARY OF THE ARGUMENT

First, the evidence was legally insufficient to convict Appellant of Aggravated Assault – Deadly Weapon, as charged in the indictment, because there was reasonable doubt as to whether Appellant committed the offense in self-

4

defense. Therefore, this Court should reverse the jury trial conviction for Aggravated Assault – Deadly Weapon and acquit Appellant of the same.

Second, the trial court reversibly erred during the guilt/innocence phase of Appellant's trial by submitting to the jury a charge that did not include the law applicable to the case, per Texas Penal Code Section 2.03(d), that a reasonable doubt on the issue of self-defense required Appellant be acquitted, and Appellant was egregiously harmed by said error. Therefore, this Court should vacate Appellant's conviction for Aggravated Assault – Deadly Weapon and remand the case back to the trial court for a new trial.

Third, the trial court reversibly erred during the guilt/innocence phase of Appellant's trial by submitting to the jury a charge that did not include an application paragraph for self-defense, and Appellant was egregiously harmed by said error. Therefore, this Court should vacate Appellant's conviction for Aggravated Assault – Deadly Weapon and remand the case back to the trial court for a new trial.

Fourth, the trial court reversibly erred by not including in the guilt/innocence phase jury charge the presumption found in Texas Penal Code Sections 9.31(a) and 9.32(b), along with the required language for presumptions favoring a defendant under Texas Penal Code Section 2.05(b), and Appellant was egregiously harmed by said error. Therefore, this Court should vacate Appellant's conviction for

5

Aggravated Assault – Deadly Weapon and remand the case back to the trial court for a new trial.

Fifth, the trial court reversibly erred during the guilt/innocence phase of Appellant's trial by submitting to the jury a charge that did not include the law applicable to the case, per Texas Penal Code Sections 9.31(e) and (f) and 9.32(c) and (d), regarding Appellant's duty to retreat, and Appellant was egregiously harmed by said error. Therefore, this Court should vacate Appellant's conviction for Aggravated Assault – Deadly Weapon and remand the case back to the trial court for a new trial.

—————————◆—————————

## APPELLANT'S FIRST POINT OF ERROR

***The Evidence was Legally Insufficient to Convict Appellant of Aggravated Assault Causing Bodily Injury – Deadly Weapon, as charged in the Indictment, because There was Reasonable Doubt whether Appellant Committed the Offense in Self-Defense.***

Due process requires that the State prove every element of the charged crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, courts consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond

6

a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In determining the legal sufficiency of the evidence, courts must consider all of the evidence in the record: both direct and circumstantial evidence, properly or improperly admitted evidence, and evidence submitted by either the prosecution or the defense. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). Courts review all of the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

A legal-sufficiency review requires an appellate court to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778. In assessing the legal sufficiency of the evidence, courts have a duty to ensure that the evidence

presented actually supports a conclusion that the defendant committed the charged crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

If an appellate court determines that the accused's conviction is not supported by legally sufficient evidence, the court must render judgment acquitting the accused of the offense. *See, e.g., Berry v. State*, 424 S.W.3d 579, 587 (Tex. Crim. App. 2014) (acquitting the defendant of misapplication of fiduciary property upon concluding that the record lacked sufficient evidence to sustain that conviction).

Regarding legal sufficiency regarding a claim of self-defense appellate courts look to all of the evidence in the light most favorable to the verdict to determine whether a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt and also could have found against Appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App.1991); see also TEX. PENAL CODE ANN. § 2.03 (stating "the prosecuting attorney is not required to negate the existence of a defense in the accusation charging commission of the offense…If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.").

8

In the instant case, in order to achieve a conviction on a second-degree felony, the State was required to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to Miles by shooting him with a handgun, and that Appellant did then and there use or exhibit a deadly weapon. TEX. PENAL CODE ANN. § 22.01; (CR – 6, 58-62).

Additionally, if there was a reasonable doubt as to whether Appellant caused bodily injury to Miles in self-defense, the jury was required to acquit Appellant. *See* TEX. PENAL CODE ANN. § 2.03; TEX. PENAL CODE ANN. § 9.31; TEX. PENAL CODE ANN § 9.32; (CR- 58-62).

Texas Penal Code Section 9.31 states, in pertinent part:

(a)...A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. The actor's belief that the force was immediately necessary as described by this subsection is presumed to be reasonable if the actor:

    (1) knew or had reason to believe that the person against whom the force was used:

        (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

        (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

9

(C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used. TEX. PENAL CODE ANN. § 9.31.

Texas Penal Code Section 9.32 states, in pertinent part:

(a) A person is justified in using deadly force against another:

(1) if the actor would be justified in using force against the other under Section 9.31; and

(2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:

(A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

(b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor was committing or attempting to commit an offense described by Subsection (a)(2)(B). TEX. PENAL CODE ANN. § 9.32.

Given the evidence adduced at trial in the instant case, no reasonable jury could have found that Appellant was not acting in self-defense when he shot Miles.

At trial, Miles admitted that he was was intoxicated the night of the shooting.

10

(RRIV – 44, 73). Miles admitted that he assaulted Appellant just moments before the shooting took place. (RRIV – 37; RRV – 103-104). Miles admitted that he was known to carry a knife with him; that he had a knife with him—with a blade approximately five inches in length—on the night of the shooting; and that, on that occasion, Miles carried the knife in a holster on the outside of his clothes. (RRIV – 45-46, 67, 82; RRV – 52). Miles admitted that once he and Appellant walked outside of Obie's, Appellant told Miles to leave, Appellant began backing up, Miles walked toward Appellant, and Miles believed that "now it's open season." (RRIV – 41-43, 45). Miles even admitted that he was "just as guilty as Appellant." (RRIV – 44).

Even without any further testimony, this evidence alone was enough for any jury to have had a reasonable doubt as to whether Appellant was acting in self-defense when he shot Miles. Additionally, Miles testified that he took his knife out of its holster; the only dispute at trial was whether Miles took his knife out before or after Appellant shot Miles. (RRIV – 46, RRV 37-41). Miles testified that Appellant shot him before he took his knife out. *Id*. Appellant testified that Miles took his knife and cut Appellant before Appellant ever shot Miles. *Id*.

Appellant testified that he went outside of Obie's and Miles and Alex came at Appellant and started beating Appellant up again. (RRV – 36-41, 50). Appellant testified that he was afraid for his life, especially after Miles took out his

11

knife and stabbed him four times. (RRV – 36-41, 77). Appellant admitted shooting Miles, but repeatedly testified that he did so in self-defense and only because Miles and Alex were attacking him, at first with their fists and then with Miles's knife. (RRV – 36-41, 68, 77).

There was no physical or scientific evidence presented by the State at trial that countered Appellant's testimony that he acted only in self-defense.

Turner also testified at trial that Miles hit Appellant first in the pool hall. (RRIV – 96). And though Turner testified that Appellant shot Miles, she also testified that she did not see whether Miles had a knife, a knife that even Miles agreed he had and pulled out of its holster during the confrontation with Appellant. (RRIV- 46-47, 102, 117, 119, 121). Furthermore, Turner's testimony that Appellant just "came around the corner and started shooting" was not only contrary to what Appellant testified, it was an unreliable recounting of the events even when compared to Miles's own testimony. (RRIV – 39-47, 98).

Finally, the State may point to Appellant's behavior after the shooting as evidencing a consciousness of guilt; specifically, the State may argue that Appellant's reluctance to be interviewed by the police or to go to the hospital to treat his injuries from being cut with the knife was somehow evidence that Appellant knew that he had had not acted in self-defense. However, Miles testified that he had the exact same behavior after the shooting. (RRIV – 51-52). Miles

12

admitted at trial that, despite being shot, he did not want to go to the hospital because "I knew they'd involve the police…I didn't want to go to the hospital." *Id*. A reasonable inference could be made that Miles did not want the police involved because he feared he could be charged with Aggravated Assault or Attempted Murder.

Given the evidence adduced at trial, no reasonable jury could have found against Appellant's claim at trial that he shot Miles in self-defense under Sections 9.31 or 9.32 of the Texas Penal Code. Therefore, this Court should reverse the jury trial conviction for Aggravated Assault – Deadly Weapon and acquit Appellant of the same.

## APPELLANT'S SECOND POINT OF ERROR

***The Trial Court Reversibly Erred in Not Including a Jury Instruction under Texas Penal Code Section 2.03(d) in the Jury Charge on Guilt/Innocence.***

Texas Penal Code Section 2.03 states, in pertinent part, that "if the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE ANN. § 2.03(d).

In the instant case, the jury was charged with the issue of self-defense under both Texas Penal Code Sections 9.31 and 9.32. However, the trial court failed to charge the jury that a reasonable doubt on the issue of self-defense under the above

13

sections required that Appellant be acquitted. (CR – 58-62); TEX. PENAL CODE ANN. § 2.03(d). Therefore, the trial court clearly erred. *See Wilkerson v. State*, 920 S.W.2d 404, 406 (Tex. App.—Houston [1st Dist.] 1996, no pet.) ("If the issue of the existence of self-defense is submitted to the jury, the court shall charge the jury that if it believes that the defendant was acting in self-defense or has a reasonable doubt thereof, it must acquit the defendant."); *Russell v. State*, 834 S.W.2d 79, 81-82 (Tex. App.—Dallas 1992, pet. ref'd) (holding that Section 2.03(d) of the Penal Code requires the trial court to instruct the jurors that they must acquit the accused if they have a reasonable doubt on the issue of self-defense, and that the trial court erred by failing to include such an instruction in the jury charge).

In analyzing a jury charge issue, the appellate court's initial inquiry is whether error exists in the charge. *Ngo*, 175 S.W.3d at 743. If error is found, the degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Ngo*, 175 S.W.3d at 743. If the defendant properly objected to the erroneous jury charge, reversal is required if the appellate court finds that the error caused "some harm" to the defendant's rights. *Id.* If error was not preserved, the appellate court may only reverse if the record shows "egregious harm." *See Id.* at 743-44; *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985).

14

Here, Appellant's trial counsel failed to object to the trial court's error. (RRV – 92-93). Therefore, this Court should use the egregious-harm standard. *Ngo*, 175 S.W.3d at 743-44. Egregious harm is determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). To determine whether a defendant suffered egregious harm, appellate courts are to assess the degree of harm in light of: (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) the arguments of counsel; and (4) any other relevant information in the record. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008); *see Almanza*, 686 S.W.2d at 172.

It is clear from the record that Appellant suffered egregious harm from the trial court failing to submit a jury an instruction on the law under Texas Penal Code Section 2.03(d). The Texas Court of Criminal Appeals case of *Allen v. State* can serve as a good reference point with which to compare the instant case. *Allen v. State*, 253 S.W.3d 260 (Tex. Crim. App. 2008). In *Allen*, the defendant was granted a Consent instruction under Texas Penal Code Section 22.06. *Allen*, 253 S.W.3d at 263. In the jury charge in *Allen*, the trial court submitted the law of Consent and an application paragraph applying the facts of the case to the law on the defense of Consent. *Id*. However, the trial court failed to instruct the jury of the requirement that the jury acquit Allen should it have a reasonable doubt with respect to whether the complainant consented to the assaultive conduct. *Id*.

15

Because Allen's trial counsel did not object to the missing instruction at trial, the Court of Criminal Appeals analyzed the error under the egregious error standard. *Allen*, 253 S.W.3d at 264.

The State in *Allen* tried to argue to the high court that other sections of the jury charge made it clear that the State had to prove its case beyond a reasonable doubt and, therefore, the jury was well aware of the burden regarding the defense of Consent. *Id.* at 265. The high court was not persuaded by that argument, stating:

> [T]hese reasonable-doubt instructions, by their terms, apply to the elements of the State's case, not to confession-and-avoidance type of defensive issues such as self defense or consent. They do not amount to an abstract instruction that any reasonable doubt as to a defensive issue must be resolved in the appellant's favor, to which we could reasonably assume the jury would refer in applying the application paragraph on consent. Nothing in the balance of the jury instructions inspires confidence that the jury would somehow glean that it must acquit the appellant in the event it should have a reasonable doubt with respect to the issue of consent, despite the deficiency in the consent instruction. *Allen*, 253 S.W.3d. at 265.

In analyzing the other factors for egregious harm other than the jury charge, the *Allen* court highlighted that Allen's defense counsel stated to the jury at closing that "the defenses have to be disproved beyond a reasonable doubt." *Id.* at 266. Furthermore, the *Allen* court looked at the record as a whole and concluded that Allen's claim that the complaining witness consented to being hit was likely "some harm" but found, given the context, that the jury would consider the complaining

witnesses' statements of "come on, hit me" to be "apparent bravado" and not an invitation to being hit. *Allen*, 253 S.W.3d at 267. The high court then found that Allen did not suffer egregious harm. *Id*. at 268.

In the instant the case, the jury charge did not contain the application paragraph contained in *Allen*. (CR – 58-62). The jury charge contained the same reasonable-doubt instructions regarding the elements of the State's case, but as in *Allen*, "they do not amount to an abstract instruction that any reasonable doubt as to a defensive issue must be resolved in the appellant's favor." *Allen* 253 S.W.3d at 260, 265. Therefore, with no application paragraph, the jury charge in the instant case was even more harmful to Appellant than was the case in *Allen*. Therefore, the first factor weighs in favor of Appellant being egregiously harmed.

Regarding the second factor, the state of the record as a whole, the self-defense charge in the instant case was both central to Appellant's case and reasonable given the facts and circumstances. As outlined above, Miles admitted that he was intoxicated the night of the shooting. (RRIV – 44, 73). Miles admitted that he assaulted Appellant just moments before the shooting took place. (RRIV – 37; RRV – 103-104). Miles admitted that he was known to carry a knife with him; that he had a knife with a five-inch blade with him that night; and that he carried that knife in a holster on the outside of his clothes. (RRIV – 45-46, 67, 82; RRV – 52). Miles admitted that once he and Appellant walked outside of Obie's,

17

Appellant told Miles to leave, Appellant began backing up, Miles walked toward Appellant, and Miles believed that "now it's open season." (RRIV – 41-43, 45). Miles admitted that he was "just as guilty as Appellant." (RRIV – 44). Additionally, Miles testified that he took his knife out of its holster, though he testified that it was only after Appellant shot him. (RRIV – 46, RRV – 37-41).

Appellant testified that Miles drew his knife and cut Appellant before Appellant ever shot Miles. *Id.* Appellant testified that he went outside of Obie's and Miles and Alex came at Appellant and started beating Appellant up again. (RRV – 36, 68). Appellant stated that he was afraid for his life, especially after Miles took out his knife and stabbed him with it four times. (RRV – 36-41, 50, 70-71, 74, 77). Appellant admitted shooting Miles, but repeatedly testified that he did so in self-defense and only because Miles and Alex were attacking him, at first with their fists and then with Miles's knife. *Id.* This was credible evidence giving rise to an issue of self-defense, not some creative argument that saying "come on, hit me" amounted to consent to being hit as in *Allen*. Therefore, the second factor weighs heavily in favor of Appellant being egregiously harmed.

Regarding the third factor, unlike in *Allen*, neither the State nor Appellant ever told the jury at closing that any reasonable doubt as to a defensive issue must be resolved in favor of Appellant. (RRV – 101-129). Therefore, regarding the arguments of counsel, that factor weighs more in favor of Appellant than in *Allen*.

18

Additionally, Appellant was egregiously harmed by the cumulative effect of this error along with the other errors committed by the trial court regarding mistakes in the jury charge, as argued in points of error three, four, and five. *See Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999).

In light of the above, and given the state of the facts and evidence, this Court should find that Appellant was egregiously harmed by the trial court's jury-charge error and, thus, should vacate Appellant's conviction and remand the case for a new trial.

## APPELLANT'S THIRD POINT OF ERROR

***The Trial Court Reversibly Erred by not Including in the Jury Charge on Guilt/Innocence an Application paragraph Applying the Self-Defense Instruction under Texas Penal Code Sections 9.31 and 9.32 to the Facts of the Instant Case.***

In the guilt/innocence phase of the instant case, the trial court instructed the jury on the law of self-defense under Sections 9.31 and 9.32 of the Texas Penal Code. (CR – 58-62); *see* TEX. PENAL CODE ANN. § 9.31; TEX. PENAL CODE ANN. § 9.31. However, the trial court was also required to apply the facts of the case to the law. *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (affirming that a trial court errs by failing to apply the law of self-defense to the facts of the case). An erroneous or incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact-

finding function. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Because, here, the trial court failed to provide an application paragraph in the guilt/innocence jury charge applying the law on self-defense to the facts of the instant case, the trial court clearly committed jury charge error. *See Barrera*, 982 S.W.2d at 416.

Appellant's trial counsel failed to object to the trial court's error in this regard. (RRV – 92-93). Therefore, this Court should use the egregious-harm standard. *Ngo*, 175 S.W.3d at 743-44. Regarding the first factor in determining egregious harm, the jury charge as a whole, the jury charge in the instant case only mentioned self-defense in the abstract, referring to the law only. (CR – 58-92); *Warner*, 245 S.W.3d at 461. At no point did the charge instruct the jury on how they were to apply the law on self-defense to the facts of the instant case. *See* (CR – 58-92).

The trial court applied the facts to the law and elements of the State's case and, in doing so, it instructed the jury that if they found that Appellant committed the elements of Aggravated Assault "then you will find the Defendant guilty of Aggravated Assault with a Deadly Weapon as charged in the indictment." (CR – 59). Of course the jury could find that Appellant committed the elements of Aggravated Assault as charged in the indictment; Appellant admitted to it. (RRV – 36-41, 50, 70-71, 74, 77). In order to get a self-defense instruction, in fact,

20

Appellant must have essentially admitted to the elements of Aggravated Assault as alleged in the indictment. *See Torres v. State*, 7 S.W.3d 712, 715 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *accord Holloman v. State*, 948 S.W.2d 349, 352 (Tex. App.—Amarillo 1997, no pet.). That was not the issue in the case; the real issue for the jury to determine was whether there was a reasonable doubt that Appellant committed those elements in self-defense under Section 9.31 and 9.32 of the Texas Penal Code.

If the jury found that Appellant committed the elements of Aggravated Assault in self-defense, or there was reasonable doubt whether Appellant committed those elements in self-defense, the jury was required to acquit Appellant. *See* TEX. PENAL CODE ANN. § 2.03(d). However, the jury did not know that; in fact, if the jury was to acquit Appellant for self-defense, the jury would be directly contradicting the trial court's instructions to "find the Defendant guilty of Aggravated Assault with a Deadly Weapon as charged in the indictment" if they found that he committed the elements of Aggravated Assault. (CR – 58-62).

Referring to other law in the abstract and assuming that the jury will use it to contradict a direct, straightforward instruction to convict Appellant if they found that he committed the elements of the offense as alleged in the indictment is unreasonable. Additionally, the error in not submitting an application paragraph was especially harmful in Appellant's case because the trial court also failed to

21

instruct the jury on the law under Texas Penal Code Section 2.03(d), as outlined in point of error number two. Thus, the first factor weighs heavily in favor of Appellant being egregiously harmed by the trial court's error.

Regarding the second factor, the state of the evidence at trial and the record as a whole, as described in point of error two, pages 17-18, and incorporated here by reference, there was credible evidence giving rise to the issue of self-defense. In fact, with Appellant having admitted to shooting Miles, self-defense was really the only issue for the jury to determine. Self-defense was not a tangential part of Appellant's case and, so, the jury charge error was not a tangential mistake. The trial court's error in not submitting an application paragraph undermined the central and only defense in Appellant's case. Therefore, the second factor weighs in favor of Appellant having suffered egregious harm.

Regarding the third factor, the arguments of counsel, the State and Appellant did talk in closing arguments about the facts of the case and the testimony regarding self-defense. However, at no point did either party break down the elements of self-defense as it related to the facts or tell the jurors that they were required to acquit Appellant if they had a reasonable doubt as to whether Appellant acted in self-defense. In short, neither party communicated to the jury what the trial court should and would have communicated if it had submitted a proper

application paragraph. Therefore, this third factor weighs in favor or Appellant being egregiously harmed.

Additionally, Appellant was egregiously harmed by the cumulative effect of this error along with the other errors committed by the trial court regarding mistakes in the jury charge. *See Chamberlain*, 998 S.W.2d 230.

Therefore, this Court should find that Appellant was egregiously harmed by the trial court's jury-charge error as outlined above and, thus, should vacate the Appellant's conviction and remand the case to the trial court for a new trial.

## APPELLANT'S FOURTH POINT OF ERROR

***The Trial Court Reversibly Erred by not Including in the Jury Charge on Guilt/Innocence the Presumption found in Texas Penal Code Sections 9.31 and 9.32, along with the Required Language for Presumptions Favoring a Defendant under Texas Penal Code Section 2.05(b).***

Texas Penal Code Section 9.31 states, in pertinent part:

(a)...The actor's belief that the force was immediately necessary as described by this subsection is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

23

(C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used. TEX. PENAL CODE ANN. § 9.31.

Texas Penal Code Section 9.32 states, in pertinent part:

(a) A person is justified in using deadly force against another:

(1) if the actor would be justified in using force against the other under Section 9.31; and

(2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:

(A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

(b) The actor's belief…that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against deadly force was used:

...

(c) was committing or attempting to commit an offense described by Subsection (a)(2)(B);

24

(2) did not provoke the person against whom the force was used; and [the actor]

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used. TEX. PENAL CODE ANN. § 9.32.

Regarding presumptions, Texas Penal Code Section 2.05(b) states, in pertinent part:

(b) When this code or another penal law establishes a presumption in favor of the defendant with respect to any fact, it has the following consequences:

(1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact; and

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption, that:

(A) the presumption applies unless the state proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist;

(B) if the state fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, the jury must find that the presumed fact exists;

(C) even though the jury may find that the presumed fact does not exist, the state must prove beyond a reasonable doubt each of the elements of the offense charged; and

(D) if the jury has a reasonable doubt as to whether the presumed fact exists, the presumption applies and the

25

jury must consider the presumed fact to exist. TEX. PENAL CODE ANN. § 2.05(b).

A defendant has the right to an instruction on any defensive issue raised by the evidence, regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991). The evidence raising the defensive issue may come from the defendant's testimony or from other sources. In order to get a charge on self-defense, a defendant need not admit to the specific offense charged, so long as he sufficiently admits the conduct alleged to justify a defensive instruction. *See Torres*, 7 S.W.3d at 715; *accord Holloman*, 948 S.W.2d at 352.

During the direct examination of Appellant, the following exchange occurred:

Defense Counsel: Did you know that Mr. Miles had a knife?

Appellant: He keeps a knife every time I had ever saw him.

Defense Counsel: And is it visible?

Appellant: Yes.

...

Defense Counsel: …What was the first thing you see [when coming out of the door of the bar]?

Appellant: I see nothing when I came outside. I started going outside to go to the car I was in and they – [Miles] and Alex jumped me again.

26

...

Defense Counsel:  They jumped you.  What does that mean?

Appellant: They started beating me up again.

Defense Counsel: Beating you up with what?

Appellant: First it was their fists.  When I was on the ground, I seen [Miles] pull his knife out of his belt buckle; and he cut me on my arm four times.

...

Defense Counsel:  How big is that [the blade]?  How much inches do you think that is?

Appellant: Six or seven inches?

Defense Counsel:  The blade is six or seven inches…?

Appellant:  Yes, ma'am.

...

Defense Counsel:  So there were two people beating you up.  One was Miles and one was…

Appellant:  Alex

Defense Counsel:  And then what happens?

Appellant:  Then my gun fell put of my back pocket, and I shot him in the leg.

Defense Counsel:  Were you afraid?

Appellant:  Terribly afraid…

Defense Counsel:  Were you afraid that it would be fatal?

Appellant: Yes ma'am, because I know how [Miles] is. (RRV – 33-38).

A few moments later, the following exchange occurred:

Defense Counsel: Why were you so afraid that you used the gun?

Appellant: Because I was on the ground and they were on top of me and he pulled his knife out and started sticking me with it…he pulled his knife and started cutting me with it.

Defense Counsel: And were you in fear of your life?

Appellant: Yes, ma'am.

...

Defense Counsel: Did you believe that [Miles] could kill you?

Appellant: Yes, ma'am. (RRV – 40-41).

Then, on re-direct examination of Appellant, the following exchange occurred:

Defense Counsel: Brian, when Miles jumped you, were you afraid for your life?

Appellant: Yes, ma'am, I was. (RRV – 70-71).

It is clear from the record that there was sufficient evidence adduced at trial that entitled Appellant to the presumption under Sections 9.31 and 9.32 because the evidence demonstrates that Miles may have been committing or attempting to commit murder.

According to Section 19.02(b) of the Penal Code, Texas's Murder statute:

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

28

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02.

There was evidence adduced at trial through the testimony of Appellant that Miles was attempting to commit murder. After having previously assaulted Appellant, Miles, who had a history of violent, felony behavior, was cutting Appellant with a large knife. A reasonable jury could infer from that behavior that Miles was attempting "to cause the death of an individual," namely Appellant. *See* TEX. PENAL CODE ANN. § 19.02; *see also* TEX. PENAL CODE ANN. § 9.31; TEX. PENAL CODE ANN. § 9.32.

Additionally, there was evidence adduced that Appellant did not provoke Miles. *Id.* Appellant testified that he walked out of Obie's and that Miles and Alex immediately began to beat him up. (RRV – 36). At that time, Appellant testified that Miles took out his knife and began to cut and stab him. *Id.* Appellant testified that he then shot Miles in self-defense and that, even then, Miles chased after Appellant with Miles's knife. (RRV – 41). Appellant also testified that he was in fear for his life and thought Miles could kill him. (RRV – 38-40). This was

29

at least some evidence from which the jury could infer that Appellant did not provoke Miles.

Finally, there was evidence adduced at trial that Appellant was not otherwise engaged in criminal activity. (RRV – 28-91).

Therefore, the presumption language in Texas Penal Code Sections 9.31 and 9.32 was law applicable to Appellant's case and, so, should have been included in the jury charge. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Villarreal v. State*, 453 S.W.3d 429 (Tex. Crim. App. 2015) (stating that when a rule or statute requires an instruction under particular circumstances, that instruction is the law applicable to the case); *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008) (same). Specifically, the trial court was required to include an instruction in the jury charge on guilt/innocence that Appellant's belief that force or deadly force, respectively, was immediately necessary was presumed to be reasonable if the jury believed that Miles was committing or attempting to commit murder, or had a reasonable doubt thereof. Additionally, the jury should have been charged with the language found in Texas Penal Code Section 2.05(b), specifically: that the presumption applied unless the State proved beyond a reasonable doubt that the facts giving rise to the presumption did not exist; that if the State failed to prove beyond a reasonable doubt that the facts giving rise to the presumption did not exist the jury must find that the presumed fact existed; that even though the jury

30

may find that the presumed facts did not exist, the State must prove beyond a reasonable doubt each of the elements charged; and that if the jury had a reasonable doubt as to whether the presumed facts existed, the presumption applied and the jury must consider the presumed fact to exist. *See* TEX. PENAL CODE ANN. § 2.05(b)(2). The trial court did not include the above jury instruction on guilt/innocence, despite that it was clear that Appellant was entitled to said charge; therefore, the trial court erred. (CR – 58-62).

Appellant did not object to the charge at the jury conference and, therefore, this Court should assess whether Appellant was egregiously harmed by said error. (RRV – 92-93); *see Allen*, 253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 174. As outlined above, in determining whether egregious harm exists, this Court must consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the parties' arguments, and (4) any other relevant information revealed by the record of the trial as a whole. *Allen*, 253 S.W.3d at 264; *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

Appellant was egregiously harmed by the trial court's error. The recent opinion of the Court of Criminal Appeals in *Villarreal v. State*, 453 S.W.3d 429 (Tex. Crim. App. 2015), is helpful in highlighting how Appellant was egregiously harmed. In *Villarreal,* the defendant was charged with the murder of Christopher

Martinez ("Martinez"). *Villarreal*, 453 S.W.3d at 431. The defendant never testified at trial; the sole evidence giving rise to a justification defense, self-defense, was a statement by the defendant to police wherein the defendant claimed that Martinez had attempted to "cut" the defendant with a sharp object. *Id*. At the close of evidence, the trial court instructed the jury on self-defense but failed to instruct the jury on the presumption of reasonableness found under Penal Code Section 9.32(b). *Id*.

On direct appeal, the Fourth Court of Appeals at San Antonio reversed the verdict of guilty, holding that the presumption was law applicable to the case and that the trial court's error in not instructing the jury regarding that law amounted to egregious harm. *Id*. The Court of Criminal Appeals granted the State's petition for discretionary review and held that Villarreal did not suffer egregious harm from the trial court's error. *Villarreal*, 453 S.W.3d at 443. In so holding, the high court reviewed the four *Almanza* factors. Regarding the jury charge as a whole, the jury charge in *Villarreal* simply contained the law on self-defense and an application paragraph applying the facts of the case to the law of self-defense. The high court agreed with the court of appeals that this factor weighed in favor of finding that the defendant was egregiously harmed, though afforded "less weight to this factor" than did the court of appeals. *Id*. at 433.

The jury charge in the instant case set forth the law on self-defense but did not include an application paragraph, unlike the charge in *Villarreal*. *Compare* (CR – 58-92) *with Villarreal*, 453 S.W.3d at 434. Furthermore, the charge in *Villarreal* contained an instruction that the jurors were to acquit the defendant if there was a reasonable doubt whether the defendant acted in self-defense, unlike the charge in the instant case. *Compare* (CR – 58-92) *with Villarreal*, 453 S.W.3d at 434. As in *Villarreal*, nowhere else in said charge was the presumption raised or explained. Thus, the first factor weighs in favor of Appellant having been egregiously harmed, and should weigh even more in favor of a finding that Appellant was egregiously harmed than the jury charge in *Villarreal.*

The Court of Criminal Appeals in *Villarreal* focused heavily on the second factor, the state of the evidence. Several witnesses in that case testified that Villarreal was intoxicated and aggressive on the night of the stabbing; all the witnesses that testified at trial testified that Villarreal stabbed Martinez multiple times and that Martinez was never holding a knife or other sharp object. *Villarreal*, 453 S.W.3d at 436. Furthermore, there was scientific evidence presented at Villarreal's trial that directly contradicted Villarreal's version of the events. *Id*. at 437, 439. And finally, the high court emphasized that even by Villarreal's own version of the facts, as he told them to the police, Villarreal had disarmed Martinez before Villarreal ever stabbed Martinez. *Id*. at 439-440.

33

By contrast, in the instant case, and as outlined in previous points of error, there was indisputable evidence that: Miles assaulted Appellant moments before the shooting; that once outside of Obie's, Appellant backed away from Miles while Miles moved toward Appellant, possessing a large knife; that at some point during the confrontation, Miles brandished his knife; and that that Miles had a history of assaultive and violent behavior. (RRIV – 21-37, 41-44, 66-67). Miles admitted these facts at trial.

There was no scientific evidence offered at trial in support of Miles's version of the encounter. The only other witness to testify at trial about the facts surrounding the confrontation was Turner, who admitted that she did not see whether Miles had a knife. (RRIV – 119, 121). Appellant testified that he shot Miles only in self-defense because he was being cut by Miles with a large knife and was in fear for his life. (RRV – 36-41, 50, 68, 77). Therefore, the state of the evidence was very much in dispute at the trial in the instant case, as compared to *Villarreal*, and the self-defense issue was key to the dispute. Therefore, in the instant case, the second factor also weighs in favor of Appellant being egregiously harmed.

Regarding the third factor, the arguments of counsel, the high court in *Villarreal* noted that self-defense was only one theory argued by the defendant's trial counsel at closing. The defendant's trial counsel also argued that, in the

34

alternative, the State failed to establish that Villarreal was the person who actually stabbed Martinez. Therefore, the high court stressed that self-defense was not the sole, or even the main, theory by which defense counsel was arguing that the jury should acquit Villarreal. No such multiple, inconsistent argument was made in the instant case. Though Appellant's trial counsel spent much of her closing argument summarizing the testimony of all the witnesses, there can be no doubt that self-defense was the sole issue for the jury to decide in Appellant's case. (RRV – 106-117). Additionally, nowhere during closing arguments was the jury informed that they were allowed to consider the above-referenced presumptions. (RRV – 101-129). Therefore, the arguments of the parties weigh in favor finding that the trial court's error egregiously harmed Appellant.

And finally, regarding the fourth factor, the Court of Criminal Appeals in *Villarreal* noted that the same jury found against the defendant on the issue of sudden-passion at the punishment stage of the trial, which "suggests the jury very likely would have rejected the assertion that [the defendant's] use of deadly force was justified." *Villarreal*, 453 S.W.3d at 442. The record in the instant case lacked any such decision from the jury that signaled that the jury would have disregarded the presumption instruction, had the trial court given it. The entire focus of the jury's decision rested on whether they believed that Appellant shot Miles in self-defense. Without the presumption-of-reasonableness instruction,

Appellant's only defense was significantly undermined. Just as important, the jury was not informed that the presumption applied unless the State proved beyond a reasonable doubt that the facts giving rise to the presumption did not exist.

The trial court's error in not including the above-referenced presumption instruction was particularly harmful given the other clear errors in the jury charge, including the lack of an application paragraph on the self-defense and a reasonable doubt instruction on self-defense, as explained in points of error two and three. The trial court's errors were all focused on depriving Appellant of his only defense. Thus, the cumulative effect of this error, along with other errors of the trial court regarding self-defense, weighs in favor of Appellant being egregiously harmed. *See Chamberlain*, 998 S.W.2d 230.

In light of the above, and given the state of the facts and evidence, this Court should find that Appellant was egregiously harmed by the trial court's jury-charge error and, thus, should vacate the Appellant's conviction and remand the case for a new trial.

## APPELLANT'S FIFITH POINT OF ERROR

*The Trial Court Reversibly Erred by not Including in the Jury Charge on Guilt/Innocence the Fail-to-Retreat Language found in Texas Penal Code Sections 9.31(e)-(f) and 9.32(c)-(d).*

Texas Penal Code Section 9.31 states, in pertinent part:

36

(e) A person who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time the force is used is not required to retreat before using force as described by this section.

(f) …in determining whether an actor…reasonably believed that the use of force was necessary, a finder of fact may not consider whether the actor failed to retreat. TEX. PENAL CODE ANN. § 9.31(e)-(f).

Texas Penal Code Section 9.32 states, in pertinent part:

(c) A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

(d) …in determining whether an actor…reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat. TEX. PENAL CODE ANN. § 9.32(c)-(d).

In the instant case, and as outlined above, the jury was instructed on the issue of self-defense under Penal Code Sections 9.31 and 9.32. (CR − 58-62). However, in the jury charge on guilt/innocence the trial court failed to instruct the jury regarding the duty to retreat. *Id.* Specifically, regarding the use of force in self-defense, the trial court failed to instruct the jury that (1) if the jury found that Appellant had the right to be present at the location where the force was used, that Appellant had not provoked Miles or another person against whom force was used, and that Appellant was not engaged in criminal activity at the time the force was used, Appellant was not required to retreat before using force, and that (2) in

37

determining whether Appellant reasonably believed that the use of force was necessary, the jury may not consider whether the Appellant failed to retreat.

Similarly, regarding the use of deadly force in self-defense, the trial court also failed to instruct the jury that (1) if they found that Appellant had a right to be present at the location where the deadly force was used, that Appellant had not provoked Miles or any other person against whom deadly force was used, and that Appellant was not engaged in criminal activity at the time the deadly force was used, Appellant was not required to retreat before using deadly force, and that (2) in determining whether Appellant reasonably believed that the use of deadly force was necessary, the jury may not consider whether Appellant failed to retreat.

As Appellant received a self-defense instruction pursuant to Sections 9.31 and 9.32 of the Texas Penal Code, and there was evidence adduced trial that Appellant was legally on his uncle's property at the time that he was attacked by Miles and responded in self-defense, that Appellant was not committing any other criminal activity at the time he was attacked by Miles and responded in self-defense, and that Appellant did not provoke Miles, the no-duty-to-retreat law under Sections 9.31(e)-(f) and 9.32(c)-(d) was law applicable to the case, and the trial court had a duty to instruct the jury accordingly. (RR V – 28-78); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Oursbourn*, 259 S.W.3d at 180. The trial court did not include the above jury instruction on guilt/innocence when it was clear that

Appellant was entitled to said charge and, therefore, the trial court erred. (CR – 58-62).

Appellant did not object to the charge at the jury conference and therefore, again, this Court should assess the trial court's error for egregious harm. (RRV – 92-93); *Allen*, 253 S.W.3d at 264; *Almanza,* 686 S.W.2d at 174. Regarding the first egregious-harm factor, the jury charge made no mention in any other section that Appellant had no duty to retreat. Thus, the entirety of the jury charge, considering this error and all of the other jury charge errors explained in points of error two, three, and four, favors a finding that Appellant was egregiously harmed.

Regarding the second factor, the state of the evidence as a whole, self-defense was the central, heavily-disputed issue in Appellant's case. Furthermore, there was specific evidence adduced at trial that raised the question of whether Appellant had a duty to retreat. Specifically, Miles himself testified that Appellant, while standing in the parking lot of his uncle's pool-hall, was backing up and telling Miles to leave while Miles approached Appellant. (RRIV – 43). At closing arguments, Appellant's trial counsel told the jury, "Brian could have run. He chose not to; and he protected himself, which is allowed under Texas law." (RRV – 107). This specifically referenced the retreat provision, but the jury was not given the actual law, a proper jury instruction, with which they could have legally considered that Appellant had no duty to retreat before he was entitled to use force

or deadly force in self-defense. Therefore, this factor should also weigh in favor of Appellant being egregiously harmed.

Regarding the third factor, the arguments of counsel, at no point during the closing arguments of either side was the specific law on Appellant not having a duty to retreat referenced. (RRV – 101-129). As mentioned above, Appellant's counsel told the jury that he was allowed to not run when attacked by Miles, but she never connected that statement with the law that would have armed the jury with knowledge that such a statement was more than merely the arguments of counsel, that it was the law under the very self-defense provision that was at the heart of the jury's decision. (RRV – 107); *see* TEX. PENAL CODE ANN. § 9.31(e)-(f); TEX. PENAL CODE ANN. § 9.32(c)-(d). Therefore, this factor should also weigh in favor of Appellant being egregiously harmed.

Additionally, the cumulative effect of this error, along with the trial court's other errors regarding self-defense instructions, weighs in favor of Appellant being egregiously harmed. *See Chamberlain*, 998 S.W.2d at 230.

Thus, the Court should find that Appellant was egregiously harmed by the trial court's jury-charge error, should vacate the Appellant's conviction, and should remand the case for a new trial.

──────────◆──────────

For the foregoing reasons, Appellant respectfully submits that the evidence was legally insufficient to convict Appellant of Aggravated Assault – Deadly Weapon, as charged in the indictment, because there was a reasonable doubt as to whether Appellant committed the offense in self-defense. Thus, Appellant prays that this Court will reverse Appellant's conviction for the charged offense and render a judgment of acquittal in this case.

Alternatively, Appellant respectfully submits that the trial court reversibly erred during the guilt/innocence phase of Appellant's trial by submitting to the jury a charge that did not include the law applicable to the case, per Texas Penal Code Section 2.03(d), that a reasonable doubt on the issue of self-defense required Appellant be acquitted. Additionally, the trial court reversibly erred during the guilt/innocence phase of Appellant's trial by submitting to the jury a charge that did not include an application paragraph for self-defense. Also, the trial court reversibly erred by not including in the jury charge on guilt/innocence the law of the presumption found in Texas Penal Code Sections 9.31(a) and 9.32(b), along with the required language for presumptions favoring a defendant under Texas Penal Code Section 2.05(b). And finally, the trial court reversibly erred during the guilt/innocence phase of Appellant's trial by submitting to the jury a charge that did not include the law applicable to the case, per Texas Penal Code Sections

41

9.31(e)-(f) and 9.32(c)- (d), regarding Appellant's duty to retreat.   Because Appellant was egregiously harmed by the trial court's jury-charge errors, either individually or cumulatively, Appellant prays that this Court will vacate Appellant's conviction for the alleged offense and will remand Appellant's case to the trial court for a new trial.

Respectfully submitted,

/s/ Kevin Stryker

**KEVIN STRYKER**
Attorney for Brian Johnson
State Bar Number: 24037565
2600 South Shore Blvd., Ste. 300
League City, Texas 77573
Telephone:  409-632-0212
Fax: 1-888-252-3033
Strykerlawfirm@gmail.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney certifies that there are 9,816 words in the foregoing computer-generated document, based upon the representation provided by Microsoft Word, the word processing program that was used to create the document, and excluding the portions of the document exempted by Rule 9.4(i)(1).

/s/ Kevin Stryker

**KEVIN STRYKER**
Attorney for Brian Johnson
State Bar Number: 24037565
2600 South Shore Blvd., Ste. 300
League City, Texas 77573
Telephone:  409-632-0212
Fax: 1-888-252-3033
Strykerlawfirm@gmail.com

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon Allison Lindblade, appellee's attorney of record on appeal, on August 31, 2015, at the following e-mail address, through the electronic service system provided by eFile.TXCourts.gov:

Allison.lindblade@co.galveston.tx.us

/s/ Kevin Stryker

**KEVIN STRYKER**
Attorney for Brian Johnson
State Bar Number: 24037565
2600 South Shore Blvd., Ste. 300
League City, Texas 77573
Telephone: 409-632-0212
Fax: 1-888-252-3033
Strykerlawfirm@gmail.com